**United States District Court**
**For the Northern District of California**

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THE REGENTS OF THE UNIVERSITY,<br><br>   Plaintiff,<br><br>   v.<br><br>GLOBAL EXCEL MANAGEMENT,<br><br>   Defendant.<br>_____/ | No. C-14-04236 DMR<br><br>**ORDER RE DEFENDANT'S MOTION TO STRIKE [DOCKET NO. 32]** |

Before the court is Defendant Global Excel Management, Inc.'s motion to strike certain allegations and prayers from Plaintiff Regents of the University of California's amended complaint. [Docket No. 32.] The court conducted a hearing on February 26, 2015. For the reasons set forth below, Defendant's motion is granted in part and denied in part.

**I. BACKGROUND**

Plaintiff is a public trust corporation authorized to administer medical facilities within the University of California system. This includes the Hospitals Auxiliary of the Medical Center of the University of California, San Francisco, ("UCSF Medical Center"), which is itself a nonprofit public benefit corporation organized under California law. [Docket No. 29 (Am. Compl.) ¶ 1.]

Defendant is a Canadian for-profit corporation with its principal place of business in Quebec, Canada. (Am. Compl. ¶ 2.) Defendant arranges for the provision of health care services to its enrollees and/or pays for or reimburses part or all of the cost for those services. (Am. Compl. ¶ 2.)

Plaintiff initially filed this lawsuit in the California Superior Court on July 9, 2014; Defendant removed the case to federal court on the basis of diversity jurisdiction.

Plaintiff alleges the following facts. From February 5, 2013 until February 22, 2013, Plaintiff provided medically necessary emergency services, supplies, and/or equipment to Patient S.K. at UCSF Medical Center. (Am. Compl. ¶ 8.) S.K. was an enrolled beneficiary in a health care service plan sponsored, administered, and/or funded by Defendant. (Am. Compl. ¶ 8.) At all relevant times, Plaintiff and Defendant did not have a written agreement regarding reimbursement rates for medical care which UCSF Medical Center would provide to patients who were members of Defendant's health plan. (Am. Compl. ¶ 9.)

Plaintiff contacted Defendant by telephone to ascertain whether Defendant or its principal was responsible for the costs associated with S.K.'s medical treatment. (Am. Compl. ¶ 10.) In response, Defendant's agent provided Plaintiff with the relevant insurance verification and insurance coverage eligibility information for S.K. under Defendant's health plan. (Am. Compl. ¶ 10.) At all relevant times, Defendant held itself out to be the responsible payor for services provided to S.K.. (Am. Compl. ¶ 11.)

Plaintiff billed $1,012,307.93 for the treatment of S.K. (Am. Compl. ¶ 14.) To date, Defendant has paid only $350,955.26 for the medical services provided to S.K., despite Plaintiff's demands for the remaining $661,352.67. (Am. Compl. ¶¶ 17-18.)

Plaintiff's original complaint brought two causes of action against Defendant: (1) quantum meruit and (2) violation of California Health and Safety Code section 1371.4(b), which requires health care service plans to reimburse providers for any emergency services and care provided to stabilize their enrollees. *See* Cal. Health & Safety Code § 1371.4(b).

In the quantum meruit claim, Plaintiff alleged that it provided medically necessary services, supplies, and/or equipment to S.K.; that it reasonably expected full reimbursement of its billed charges; that it billed charges totaling $1,012,307.93 for the care of S.K.; that Defendant benefitted from the care provided to S.K.; and that Defendant failed to properly pay Plaintiff by paying only a portion of the billed charges, causing Plaintiff to incur damages. (Compl. ¶¶ 19-26.) In the section

2

1371.4 claim, Plaintiff asserted that Defendant failed to properly pay for the emergency medical services, supples, and/or equipment that Plaintiff provided to S.K.. (Compl. ¶¶ 27-34.)

On September 25, 2014, Defendant moved to dismiss Plaintiff's second cause of action under Federal Rule of Civil Procedure 12(b)(6), arguing that section 1371.4 does not provide a private right of action. [Docket No. 7 (Def.'s Mot.) 2.] The court dismissed the section 1371.4 claim with leave to amend. [Docket No. 28.]

Plaintiff filed an amended complaint on December 15, 2014. Plaintiff's quantum meruit claim remains unchanged, but its second cause of action now states a claim under California's Unfair Competition Law ("UCL") (Cal. Bus. & Prof. Code § 17200 *et seq*.) premised on Defendant's alleged violation of section 1371.4(b). (Am. Compl. ¶¶ 28-29.) Defendant now moves to strike certain allegations and prayers from Plaintiff's amended complaint.

**II. LEGAL STANDARDS**

Pursuant to Federal Rule of Civil Procedure 12(f), upon motion or *sua sponte*, a court may strike "from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." The function of a 12(f) motion to strike is to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial. *Fantasy, Inc.*, 984 F.2d at 1527 (quotation marks and citation omitted). Rule 12(f) motions should not be granted unless it is clear that the matter to be stricken could have no possible bearing on the subject matter of the litigation. *Rosales v. Citibank*, 133 F. Supp. 2d 1177, 1180 (N.D. Cal. 2001); *Colaprico v. Sun Microsystems, Inc.*, 758 F. Supp. 1335, 1339 (N.D. Cal. 1991).

A decision to strike material from the pleadings is vested to the sound discretion of the trial court. *Nurse v. United States*, 226 F.3d 996, 1000 (9th Cir. 2000). However, Rule 12(f) does not authorize a district court to strike a claim for relief on the grounds that such relief is precluded as a matter of law. *See Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 976 (9th Cir. 2010). To the extent that a party's Rule 12(f) motion is "really an attempt to have certain portions of [their] opponent's] complaint dismissed or to obtain summary judgment . . . as to those portions of the suit," that action is "better suited for a Rule 12(b)(6) motion or a Rule 56 motion." *Id.* at 974.

1    Where a motion is in substance a Rule 12(b)(6) motion, but is incorrectly denominated as a
2 Rule 12(f) motion, a court may convert the improperly designated Rule 12(f) motion into a Rule
3 12(b)(6) motion. *See Consumer Solutions REO, LLC v. Hillery*, 658 F. Supp. 2d 1002, 1021 (N.D.
4 Cal. 2009) (quotation marks and citations omitted).

## III. DISCUSSION

Defendant's objections to the amended complaint can be roughly divided into two categories. First, Defendant moves to strike all references in the amended complaint that could be construed as a request for damages under the UCL, since the UCL only provides for the recovery of restitution, and not damages. Second, Defendant seeks to strike the actual amount of relief that Plaintiff requests in its UCL claim, arguing that it constitutes damages rather than restitution, and is thus unavailable under the UCL.

**A.    References to Damages**

Section 17203, which describes the remedies available under the UCL, states that: "Any person who engages, has engaged, or proposes to engage in unfair competition may be enjoined in any court of competent jurisdiction.  The court may make such orders or judgments . . .  as may be necessary to restore to any person in interest any money or property, real or personal, which may have been acquired by means of such unfair competition." Cal. Bus. & Prof. Code § 17203.  Private plaintiffs suing under this section cannot claim damages. *See Cortez v. Purolator Air Filtration Prods. Co.*, 23 Cal. 4th 163, 173 (2000) (citations omitted).

Accordingly, Defendant seeks to strike all references to "damages" from Plaintiff's UCL claim. These include: 1) the parenthetical subheading to Plaintiff's second cause of action, which reads, "For *Monetary Damages* and/or Permanent Injunctive Relief Under Cal. Bus. & Prof. Code § 17200 *et seq.*"; 2) paragraph 31 of Plaintiff's amended complaint, which alleges that it has been "*specifically damaged* to its detriment in the principal amount of $661,352.67" as a result of Defendant's "refusal to pay the reasonable value of services provided to the Patients"; and 3) Plaintiff's request for "*specific relief* in a sum to be proven at trial, but not less than $661,352.67," in the third paragraph of its prayer for relief. (Am. Compl. ¶¶ 7, 31, Prayer ¶ 3 (emphasis added).)

1    Plaintiff concedes that damages are not available under the UCL.  (Pl.'s Opp'n 5.)  Plaintiff
2 states that nothing in its amended complaint should be interpreted as a request for damages under the
3 UCL, but acknowledges that its wording could have been more clear. In light of the parties'
4 agreement that Plaintiff cannot seek damages under the UCL, and Plaintiff's acknowledgment of
5 poor word choice, the court grants Defendant's motion and orders that the ambiguous references to
6 damages be stricken from Plaintiff's amended complaint.

### B.    Plaintiff's Specific Request for Monetary Relief in its UCL Claim

Defendant also moves to strike the specific amount of money sought in Plaintiff's UCL claim.  In so doing, Defendant is essentially attempting to use Rule 12(f) to strike a claim for relief as a matter of law.  *See Whittlestone*, 618 F.3d at 974.  This is not a proper use of that rule.  *Id*.  Such a request is "better suited for a Rule 12(b)(6) motion or a Rule 56 motion."  *Id.*  However, "where a motion is in substance a Rule 12(b)(6) motion, but is incorrectly denominated as a Rule 12(f) motion, a court may convert the improperly designated Rule 12(f) motion into a Rule 12(b)(6) motion."  *Consumer Solutions*, 658 F. Supp. 2d at 1021 (quotation marks and citations omitted).  The court does so here.

Defendant offers two arguments against Plaintiff's request for relief, both of which boil down to a claim that the amount requested does not represent "restitution."  First, Defendant argues that Plaintiff's restitution claim is really a damages claim in disguise, because it requests the same amount sought in its quantum meruit claim.  Second, Defendant argues that the amount of relief Plaintiff requests—$661,352.67, which is the difference between Plaintiff's billed amount and the amount already paid by Defendant—is not eligible for restitution because it represents a balance of "billed charges" in which Plaintiff has only an expectation interest.  The court will address each argument in turn.

Defendant cites four cases for the proposition that if a plaintiff requests the same amount of relief as both "damages" and "restitution," a court will reject the restitution claim as one for damages "under a different name."  *United States v. Sequel Contractors, Inc.*, 402 F. Supp. 2d 1142, 1156-57 (C.D. Cal. 2005); *Nat'l Rural Telecomm. Co-op. v. DIRECTV, Inc.*, 319 F. Supp. 2d 1059, 1091 (C.D. Cal. 2003); *Seibels Bruce Grp., Inc. v. R.J. Reynolds Tobacco Co.*, No. C-99-0593 MHP,

1999 WL 760527, at *7 (N.D. Cal. Sept. 21, 1999); *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1150-51 (2003).  However, the fact that a party requested the same amount in both restitution and damages was not dispositive in any of these cases.  Rather, the court in each case determined that the remedy sought was not restitutionary, because it did not constitute the return of monies given, or funds in which the requesting party had an ownership interest.[1]

In fact, a plaintiff can state valid claims for the same amount as both damages and restitution. *See Cortez*, 23 Cal. 4th at 174 (2000) (holding that earned but unpaid wages can be recovered as "damages" in a suit based on breach of contract or fraud, and as "restitution" in a UCL action premised on a violation of the Labor Code).  Unlike the parties in the cases cited by Defendant, Plaintiff has stated a valid claim that it conferred a benefit directly on Defendant—namely, the provision of stabilizing emergency care to Defendant's enrolled beneficiary, S.K.  Plaintiff further alleges that Defendant had a legal duty to reimburse it for this benefit under section 1371.4, that Defendant failed to do so, and that Plaintiff is entitled to restitution as a result.

Defendant next argues that Plaintiff's request for relief must be limited to its "cost of service," because it has "at best, an expectation interest" in anything beyond this amount (Def.'s Reply 5.)  In support of this argument, Defendant cites *Korea Supply* for the proposition that an expectation interest cannot form the basis of a claim for restitution under the UCL.  While *Korea*

---

[1] For example, in *Sequel Contractors*, intervenor plaintiff Orange County filed suit against defendant, alleging that it had violated California's False Claims act and engaged in negligent misrepresentation, breach of contract, negligence, and fraud and deceit. *See Sequel Contractors*, 402 F. Supp. 2d at 1146. Defendant then filed a UCL counterclaim against Orange County, alleging that the county's improper supervision of defendant's project managers caused it to "incur payroll expenses and suffer a decline in the value of its business." *Id.* at 1146, 1156. The court found that defendant did not state a cognizable claim for restitution under the UCL, because it did not allege any facts suggesting that it had an "ownership interest" in property or funds in the county's possession. *Id.* at 1156.

Similarly, in *National Rural Telecommunications*, plaintiffs brought a UCL claim against DirectTV, alleging that the latter had failed to abide by an options contract entered into between plaintiffs and defendant's predecessor-in-interest, under which plaintiffs would have had the option to offer premium cable services to their subscribers. *See Nat'l Rural Telecomm.*, 319 F. Supp. 2d at 1064-65. Plaintiffs alleged that they had lost profits and subscription revenues as a result of defendant's failure to honor this options contract. *Id.* at 1080. However, the court found that plaintiffs failed to state a valid UCL claim because they were seeking to recover "what they believe[d] they would have obtained if [defendant] had performed in accordance with [its] agreements," and thus had only a contingent expectation interest in this sum. *Id.* at 1080, 1091.

*Supply* holds that a plaintiff cannot recover a "contingent expectancy interest" under the UCL, that holding is inapplicable here.[2]

The UCL claim at the center of *Korea Supply* was brought by KSC, a company that represented defense industry contractors in their negotiations with the Republic of Korea. *Korea Supply*, 29 Cal. 4th at 1141. KSC represented a Canadian company, MacDonald Dettwiler, in its bid for a contract to build a synthetic aperture radar (SAR) system for the Korean military. *Id*. Had the Republic of Korea awarded the contract to MacDonald Dettwiler, KSC would have earned a commission of over $30 million—15% of the contract price. *Id*. MacDonald Dettwiler offered better equipment and a lower price than its competitors, but the government chose to award the contract to a subsidiary of Lockheed Martin instead, allegedly as a result of bribes and sexual favors given to key Korean officials by the subsidiary's representative. *Id*. at 1141-42.

After learning of these actions, KSC brought suit against Lockheed Martin, stating claims under both tort law and the UCL. *Id*. As part of its unfair competition claim, KSC "sought disgorgement to it of the profits realized by Lockheed Martin on the sale of the SAR to Korea," in the amount of its lost commission. *Id*. at 1142, 1151. However, the court concluded that whatever profit Lockheed earned had come from the Republic of Korea, not KSC, and that KSC's interest in its lost commission was a mere "attenuated expectancy," contingent upon MacDonald Dettwiler winning its bid to construct Korea's SAR system. *Id.* at 1149-50. Therefore, the court found that KSC's claim was "properly characterized" as one for "nonrestitutionary disgorgement of profits," which is not an available remedy under the UCL. *Id.* at 1150-1152 ("[c]ompensation for a lost business opportunity is a measure of damages and not restitution to the alleged victims" (citation omitted)); *see also Nat'l Rural Telecomm*., 319 F. Supp. 2d at 1080, 1091 (finding that plaintiffs could not state valid restitution claim under UCL because they were actually seeking to "recover

---

[2] Defendant also claims that *Korea Supply* "emphatically" rejected "disgorgement of a defendant's profits as a measure of restitution." (Def.'s Reply 3 (citing *Korea Supply*, 29 Cal. 4th at 1148).) This is incorrect. To the extent that disgorgement results in restitution, it is still permissible under the UCL. *Korea Supply*, 29 Cal. 4th at 1145. *Korea Supply* simply rejected "nonrestitutionary" disgorgement in individual actions under the UCL, and held that an individual may only use this law to recover "profits unfairly obtained" if those profits "represent monies given to the defendant or benefits in which the plaintiff has an ownership interest." *Id.* at 1148 (emphasis added).

//

//

expectation damages for what they believe[d] they would have obtained if [defendant] had performed in accordance with [its] agreements.").

The plaintiff in *Korea Supply* was not entitled to restitution under the UCL because it "was not seeking the return of money or property that was once in its possession," nor did it have a "vested interest in the money it [sought] to recover." *Id.* at 1149.  In contrast, Plaintiff seeks a "quantifiable" sum allegedly owed to it by Defendant—the balance of its billed charges for medical care given to a member of Defendant's insurance plan. *See Walnut Creek*, 54 Cal. 3d at 263 (noting that restitution encompasses "quantifiable" sums that one party owes another).  This amount is more akin to the earned but unpaid wages of *Cortez* than the contingent commission of *Korea Supply*.[3] *Compare Cortez*, 23 Cal. 4th at 177-78 (finding that employees can state a claim for restitution under the UCL because they have a vested property right in their earned but unpaid wages), *with Korea Supply*, 29 Cal. 4th at 1149-50 (finding that plaintiff could not seek restitution for its lost contingent commission, because it had only an "attenuated expectancy" interest in that amount).

Defendant may be correct that there is not yet any explicit precedent for "the proposition that a healthcare provider has a vested interest in its billed amounts," but it presents no authority (and

---

[3] Other cases cited by Defendant in support of its position that Plaintiff does not have a vested interest in the balance of its billed charges are similarly distinguishable from the current case. *See Nat'l Rural Telecomm.*, 319 F. Supp. 2d at 1080, 1091 (plaintiffs could not state a valid restitution claim under the UCL because they were actually seeking to "recover expectation damages for what they believe[d] they would have obtained if [defendant] had performed in accordance with [its] agreements."); *Vikco Ins. Servs., Inc. v. Ohio Indem. Co.*, 70 Cal. App. 4th 55, 67-68 (1999) (insurance agent whose contract had been terminated by the insurer could not use the UCL to "recover unrealized commissions and general compensatory damages it suffered as a result of being given less than 120 days written notice of termination,"); *Madrid v. Perot Sys. Corp.*, 130 Cal. App. 4th 440, 453-56 (2005) (holding that plaintiff did not have vested interest in money that defendant received through alleged sale of confidential information to third parties or in "ill-gotten gain" that defendant energy producers and suppliers received through their alleged overcharges, where plaintiff did not seek to recover actual overcharges paid by class members).

this court is also unaware of any) for its contention that "reimbursement" under section 1371.4 of the Knox-Keene act is limited to a provider's cost of service.[4]  (Def.'s Reply 4.)

Section 1371.4 was added to the Knox-Keene Act "to ensure that California's citizens received proper care and to eliminate incentives for carriers to deny care and reduce payments to physicians." *California Pac. Reg'l Med. Ctr. v. Global Excel Mgmt., Inc.*, No. 13-CV-00540 NC, 2013 WL 2436602, at *7 (N.D. Cal. June 4, 2013) (citation omitted).  The Department of Managed Health Care regulations interpreting this section define "reimbursement" of a claim made by non-contract healthcare provider as "payment of the reasonable and customary value for the health care services rendered based upon statistically credible information that is updated at least annually and takes into consideration: (i) the provider's training, qualifications, and length of time in practice; (ii) the nature of the services provided; (iii) the fees usually charged by the provider; (iv) prevailing provider rates charged in the general geographic area in which the services were rendered; (v) other aspects of the economics of the medical provider's practice that are relevant; and (vi) any unusual circumstances in the case." Cal. Code Regs., tit. 28, § 1300.71(a)(3)(B) (emphasis added).  In light of these facts, at least one court has held that section 1371.4 requires an insurer to reimburse a reasonable sum, not "any amount it chooses, no matter how little," and that reasonableness of a reimbursement can be determined in court. *Bell v. Blue Cross of California*, 131 Cal. App. 4th 211, 214, 217-18, 222 (2005).

Applying the factors set forth in the Department of Managed Health Care's regulations, a fact-finder could determine that Plaintiff's full billed amount represents the reasonable and customary value of the emergency services provided to S.K.  For this reason, the court denies Defendant's motion to dismiss the amount sought in Plaintiff's UCL claim.

## IV. CONCLUSION

---

[4] While "a medical care provider's billed price for particular services is not necessarily representative of either the cost of providing those services or their market value," *Howell v. Hamilton Meats & Provisions, Inc.*, 52 Cal. 4th 541, 564 (2011), Defendant has failed to show how this fact has any bearing on what Plaintiff can seek as "reimbursement" under section 1371.4.  *Hamilton Meats* is particularly inapplicable here, because the providers in that case had negotiated special lower rates with the insurer—exactly the sort of arrangement that Plaintiff has *not* made with Defendant.  *Id.* at 563.

For the reasons stated above, Defendant's motion to strike references to damages from Plaintiff's UCL claim is granted. Defendant's motion to dismiss Plaintiff's request for relief is otherwise denied.

The court grants Plaintiff leave to further amend its complaint in accordance with this order. Any amended complaint shall be filed within fourteen days of the date of this order.

IT IS SO ORDERED.

Dated:  March 25, 2015



DONNA M. RYU
United States Magistrate Judge